UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:14CV-00164-GNS

**LARRY ROBY**                                                                                                   **PLAINTIFF**

**VS.**

**CAROLYN W. COLVIN, Acting
Commissioner of Social Security**                                                 **DEFENDANT**

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND RECOMMENDATION**

BACKGROUND

The Commissioner of Social Security denied Larry Roby's application for disability insurance benefits and supplemental security income. Roby seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Both Roby (DN 19) and the Commissioner (DN 24) have filed Fact and Law Summaries. The District Judge has referred the case to the undersigned United States Magistrate Judge (DN 10) to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law, and Recommendations. 28 U.S.C. § 636(b)(1)(B).

FINDINGS OF FACT

Larry Roby ("Roby") quit high school in the tenth grade to go work for his father's woodworking business (Tr. 34). Roby began running the woodworking business when his father passed away, and he continued to do so until the business closed in 2008. After that, Roby drew

unemployment. In October of 2010, Roby was injured in a serious dirt bike accident. Following the accident, he underwent two surgeries, an open reduction surgery of his right tibia plateau in October of 2010 (Tr. 348) and an ACL/PCL reconstruction in February of 2011 (Tr. 450). He has also suffered from mental health issues since the dirt bike accident. He was admitted to a 72-hour court ordered emergency mental detention in December of 2011 after he self-inflicted a cut on his arm and took a handful of his mother's Lortab pills (Tr. 521). Roby also began seeking help from Adanta mental health clinic in June of 2012 (Tr. 549).

Roby filed for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits, claiming he became disabled on the date of his dirt bike accident, October 25, 2010, as a result of a knee injury resulting in two surgeries, neck pain, and back pain (Tr. 285). His applications were denied initially and again on reconsideration (Tr. 81, 87, 99, 112). Administrative Law Judge Roger L. Reynolds ("ALJ") conducted a hearing in Lexington, Kentucky (Tr. 31). Roby attended the hearing with his counsel, Stacey Hibbard (Id.). Chris Rymond, an impartial vocational expert also attended and testified (Id.).

At the hearing's conclusion, Roby's counsel requested that Roby be sent for an orthopedic consultative examination in order to document the instability of his knee (Tr. 47). The ALJ agreed (Id.). Dr. Edgar Lopez-Suescum subsequently examined Roby and rendered an opinion, diagnosing Roby with traumatic unstable arthritis of the right knee with loss of stability, tobacco abuse disorder, and obesity (Tr. 605). Following Dr. Lopez-Suescum's evaluation, the ALJ conducted a second hearing in Lexington, Kentucky (Tr. 51). Roby, his counsel, and Tina Stambaugh, an impartial vocational expert, all attended the hearing (Id.). The ALJ issued an unfavorable decision on May 10, 2013 (Tr. 22-23).

The ALJ applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R § 404.1520; <u>Kyle v. Comm'r of Soc. Sec.</u>, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Roby has not engaged in substantial gainful activity since October 25, 2010, his alleged onset date (Tr. 15). Second, Roby has the following severe impairments: polysubstance abuse, allegedly in remission; generalized anxiety disorder; rule out substance induced mood disorder; affective disorder; status post right tibia plateau fracture with ORIF; status post fracture of transverse processes of C6/C7; status post fracture of right clavicle (Tr. 15-16). Third, none of Roby's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 18). Fourth, Roby has the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> The claimant can sit for six hours, stand or walk for two hours in an 8-hour workday. The claimant requires a sit stand option with no prolonged standing or walking in excess of thirty minutes without interruption. The claimant is unable to climb ropes, ladders or scaffolds. He is limited to occasional climbing of stairs or ramps; no operation or foot pedal controls with the right leg; no kneeling or crawling; requires entry level work with simple repetitive procedures, no frequent changes in work routines, no requirement for detailed or complex problem solving, independent planning or the setting of goals, and should work in a nonpublic environment with only occasional and casual contact with the general public.

(Tr. 19). Additionally, Roby is unable to perform any of his past relevant work (Tr. 21). Fifth and finally, considering Roby's age (34 years old), high school education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform (Tr. 21).

Roby appealed the ALJ's decision (Tr. 8). The Appeals Council declined review (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Roby appealed to this Court (DN 1).

## CONCLUSIONS OF LAW

### A. Standard of Review

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching her conclusion. See Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993).

### B. Evaluation Process

The Social Security Act and corresponding regulations provide a five-step sequential evaluation process for determining whether an individual has a compensable disability. 20 C.F.R. § 404.1520(a)(4); *see also* Rabbers v. Comm'r Soc. Sec. Admin., 582 F.3d 647, 652 (6th Cir. 2009).

The five steps are summarized as follows:

(1) Is the claimant engaged in substantial gainful activity?

(2) Does the claimant have a severe medically determinable impairment or combination of impairments that significantly limits his or her ability to do basic work activities?

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairments within Appendix 1?

(4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

(5) Does the claimant's age, education, past work experience, and residual function capacity allow him or her to perform a significant number of jobs in the national economy?

*See* 20 C.F.R. § 404.1520. The claimant bears the burden of proof through the first four steps of the evaluation, but, at step five, the burden shifts to the Commissioner. Johnson v. Comm'r of Soc. Sec., 652 F.3d 646, 651 (6th Cir. 2011).

### C. Analysis

Roby contends that the ALJ's failure to consider whether he met Listing 1.02A (Major dysfunction of joints), Listing 1.03 (Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint), and Listing 1.06 (Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones) at Step Three constitutes reversible error (DN 19-1, at p. 7-8). The Commissioner responds that Roby's claims are meritless because no doctor in the record, including the state agency physicians, found that Roby met or equaled a listed impairment (DN 24, at p. 3-4). For the reasons explained below, the undersigned finds in favor of the Commissioner.

Step Three of the sequential evaluation process requires the Administrative Law Judge to find a claimant disabled if he meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); Sullivan v.

Zebley, 493 U.S. 521, 889, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). Yet, neither the regulations nor the Sixth Circuit require an Administrative Law Judge to address every listing or listings that the claimant clearly does not meet. Smith-Johnson v. Comm'r of Soc. Sec., 579 F. App'x 426, 432 (6th Cir. 2014); Sheeks v. Comm'r of Soc. Sec., 544 F. App'x 639, 641 (6th Cir. 2013).[1] To prove reversible error, the claimant must establish that a "substantial question" exists as to whether he meets a listing. Sheeks, 544 F. App'x at 641-42. A "substantial question" requires the claimant "point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." Smith-Johnson, 579 F. App'x at 432 (citing Sullivan, 493 U.S. at 530; 110 S.Ct. at 885) (additional citations omitted). Absent such evidence, the Administrative Law Judge "does not commit reversible error by failing to evaluate a listing at Step Three." Smith-Johnson, 579 F. App'x at 433.

The ALJ's decision here does not discuss Listings 1.02A, 1.03, or 1.06 (Tr. 18-19). Instead, at Step Three, the ALJ solely analyzed Roby's mental impairments under Listings 12.04, 12.06, and 12.09 (Id.).[2] The undersigned, therefore, must determine whether Roby raises a substantial question as to his ability to satisfy each requirement of the three challenged listings.

### 1. Listing 1.02

First, Roby claims he meets each requirement of Listing 1.02A Major dysfunction of a joint(s) (due to any cause). Listing 1.02 is:

---

1 Although, "it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion," it is well settled that an ALJ can consider all of the evidence from the record without directly addressing in his written decision every piece of evidence submitted by a party. Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting Loral Defense Sys.-Akron v. N.L.R.B., 200 F.3d 436, 453 (6th Cir. 1999)).

2 The undersigned notes that counsel for Roby did raise Listing 1.06 for consideration before the ALJ (Tr. 47). At the end of the first administrative hearing, counsel specifically asked for Roby to be sent to an orthopedic consultative examination to see if his tibial fracture and knee damage fall within Listing 1.06 (Id.). The ALJ was thus on notice that Roby was attempting to prove a severe impairment, relating to his knee, with at least one listing.

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankyloses, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (*I.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02A. Roby argues that the instability of his right knee meets Listing 1.02A (DN 19-1, at p. 9). As support, he cites to the UPA Orthopaedic Services clinic records and Dr. Edgar Lopez-Suescum's opinion[3] (Id.).

The undersigned is unpersuaded. Although Dr. Lopez-Suescum's opinion diagnoses Roby with "loss of stability" in the right knee, he explicitly notes that "[t]here is no evidence of any deformities of the upper and lower extremities" (Tr. 605). Further, the records from UPA Orthopaedic Services are largely illegible. The notes from a follow up appointment, for instance, dated November 17, 2010, are difficult to decipher beyond the diagnosis of tibia plateau, dislocation of knee, ACL deficiency, and possible PCL deficiency (Tr. 444). In fact, a typed "exam description" from the same date, reviewing Roby's lateral radiographs, indicates improvement after Roby's tibia surgery, including decreased swelling, decreased joint effusion, healed fracture of the fibular head, and near anatomic alignment of the tibial plateau (Tr. 455). Further, there are no clear notes regarding chronic joint pain or stiffness, besides Roby's subjective complaints. Because the record evidence fails to support at least two of the diagnostic criteria for Listing 1.02A, the undersigned finds that Roby fails to raise a substantial question as to whether he meets the listing. Accordingly, the ALJ did not commit reversible error by failing to discuss

---

3 Dr. Lopez-Suescum examined Roby between the two administrative hearings at the request of Roby's counsel, but the ALJ entirely fails to mention Dr. Lopez-Suescum's opinion in his decision.

Listing 1.02A.

## 2. Listing 1.03

Next, Roby challenges the ALJ's failure to discuss Listing 1.03 at Step Three. Listing 1.03 requires a claimant establish: "Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.03.

Roby claims he can meet the diagnostic criteria for Listing 1.03 because he underwent ACL/PCL reconstruction surgery in February of 2011 (DN 19-1, at p. 9). The record clearly supports that Roby had ACL/PCL reconstruction surgery on his knee, a major weight-bearing joint (Tr. 37, 60, 79, 448, 450, 470, 603). However, Roby must still point to evidence that proves he was unable to "return to effective ambulation" within 12 months of his reconstruction surgery.

Listing 1.00B2b sets forth a definition for the "inability to ambulate effectively." This listing provides that "[t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." Examples of ineffective ambulation are also identified in the Listing, including, but not limited to: the inability to walk without use of a walker or two crutches or two canes; the inability to walk a block at a reasonable pace on rough or uneven surfaces; the inability to use standard public transportation; the inability to carry out routine ambulatory activities such as shopping; and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b.

Roby argues that his testimony, combined with Dr. Lopez-Suescum's opinion, proves that he cannot ambulate effectively (DN 19-1, at p. 9-10). It is true that Dr. Lopez-Suescum found

that Roby meets at least three of the examples from Listing 1.00B2b, namely, he cannot travel without a companion, cannot walk a block at a reasonable pace on rough or uneven surfaces, and cannot climb a few steps at a reasonable pace with a single handrail (Tr. 614). Yet, Dr. Lopez-Suescum specified that the limitations he imposes in the medical source statement are based on Roby's responses to his questions, meaning his limitations may be merely Roby's subjective complaints (Tr. 604). And other findings by Dr. Lopez-Suescum cut toward Roby being able to ambulate effectively. For instance, Dr. Lopez-Suescum indicates Roby can shop, ambulate without two canes or two crutches, and use standard public transportation (Tr. 614). Dr. Lopez-Suescum also noted in his evaluation that he was intrigued as to why Roby did not use an ambulatory assistive device to alleviate the complaints of his right knee pain (Tr. 605, 610).

Additional evidence from the record indicates that Roby retained the ability to ambulate effectively following his reconstruction surgery. The records from his post-operation appointment on February 22, 2011, indicate that Roby's pain was improving, he was "ambulating well," and he should wear a brace for four weeks (Tr. 452). Further, Roby points to no evidence in the record to satisfy the twelve month duration requirement. Although Dr. Lopez-Suescum opined that Roby's ambulatory limitations have lasted or will last for twelve consecutive months, his opinion was given almost two years after Roby's reconstructive surgery and, thus, fails to shine light on Roby's abilities during the twelve months following his surgery (Tr. 603, 614). The records dated after Roby's reconstructive surgery primarily address his mental health issues and fail to provide guidance on his ability to ambulate effectively.

Considering Dr. Lopez-Suescum's opinion, the lack of objective evidence, and Roby's use of only one, non-prescribed cane, the undersigned finds Roby does not raise a substantial question

9

as to whether he meets the requirements of Listing 1.03. The ALJ's failure to mention or evaluate Listing 1.03 at Step Three, consequently, does not constitute reversible error.

### 3. Listing 1.06

Lastly, Roby claims the ALJ's failure to address Listing 1.06 at Step Three was reversible error. Listing 1.06 requires:

> Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones. With:
>
> A. Solid union not evident on appropriate medically acceptable imaging and not clinically solid; and
>
> B. Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.06. Roby points to his right knee x-ray from December 14, 2011, which showed a "nearly healed medial tibial plateau fracture," in arguing that his tibia is not solid (DN 19-1, at p. 9).

Indeed, the record shows that Roby suffered from a fractured tibia, satisfying the diagnostic criteria of Listing 1.06 (Tr. 78, 84, 354, 364-65, 367, 394, 397, 443, 448, 452, 605). As for the paragraph A criteria, a nonunion is "defined as a 'failure of the ends of a fractured bone to unite.'" Wright v. Astrue, 2011 WL 3444053, at *3 (M.D. Tenn. Aug. 8, 2011) (citation omitted). Roby underwent open reduction surgery of his right tibia plateau after his dirt bike accident (Tr. 348). Roby's post-operation records, which reviewed the radiographs of Roby's knee, fail to mention nonunion and note that his tibial fracture was assessed as "closed stable" Tr. 403-04). However, later records do indicate potential "nonunion" (Tr. 459), finding the tibial fracture to be healing but still "readily apparent" (Tr. 458). Roby is correct that when his x-rays were reviewed, over a year after his tibia surgery, the fracture was still not entirely healed (Tr. 484). Taking all of

10

these records into consideration, the undersigned finds that Roby has established a substantial question as to whether he can meet the paragraph A criteria for Listing 1.06.

It is well established, however, that a claimant must meet *all* of the specified medical criteria of a listing in order to show that his impairment matches the listing. Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis added). Hence, Roby must also establish a substantial question regarding whether he meets the paragraph B criteria to prove the ALJ committed reversible error. As mentioned above, Listing 1.00B2b provides guidance in determining a claimant's ability to ambulate effectively. During the 12 months following Roby's tibia surgery, there is little evidence that he had an inability to ambulate effectively. The records indicate Roby had only a "mild limp" (Tr. 448) and was not prescribed a cane or other assistive device. The only support for Roby's inability to ambulate effectively is his own subjective testimony, which without corroborating objective medical evidence, does not establish a substantial question. *See* Shavers v. Sec'y of Health & Human Servs., 839 F.2d 232, 234 (6th Cir. 1987) ("[s]ubjective complaints of pain alone cannot themselves establish the existence of disability"). The ALJ's failure to discuss Listing 1.06 at Step Three, therefore, does not constitute reversible error.

Because Roby has failed to point to specific evidence that demonstrates he can reasonably meet or equal every requirement of Listings 1.02A, 1.03, and 1.06, the undersigned finds the ALJ's decision to be supported by substantial evidence in the record and comports with applicable law.

11

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the ALJ's findings as to Roby's claims are supported by substantial evidence and comport with the applicable law. The undersigned recommends that judgment be **GRANTED** in favor of the Commissioner.

## NOTICE

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984).

Copies: Counsel of Record