UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:14-CV-00164-GNS-HBB

LARRY ROBY      PLAINTIFF

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security      DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Magistrate Judge Brennenstuhl's Findings of Fact, Conclusions of Law and Recommendation ("R&R") (Findings of Fact, Conclusions of Law and Recommendation, DN 25 [hereinafter R&R]), and the objections thereto by Plaintiff Larry Roby ("Roby") (Pl.'s Objs. to R&R, DN 26 [hereinafter Pl.'s Objs.]). For the reasons stated below, the Court hereby **OVERRULES** Roby's objections and **ADOPTS** the Findings of Fact, Conclusions of Law and Recommendation of Magistrate Judge Brennenstuhl in full.

### I.     STATEMENT OF FACTS AND CLAIMS

Roby quit school in the tenth grade in order to work in his father's woodworking shop. (Administrative R. 32-33 [hereinafter R.]). Roby worked there until the woodworking shop closed in 2008. (R. 34-35). On October 25, 2010, Roby was involved in a dirt-bike accident. (R. 351, 356). On October 29, 2010, he underwent an open reduction and internal fixation of his right tibia plateau. (R. 348). On February 17, 2011, he underwent ACL/PCL graft reconstruction on his right knee. (R. 452). On June 3, 2011, he informed his physician that he still experiences pain, in that his knee was still sore and felt like it was grinding. (R. 441). He again reported knee

pain, particularly when twisting or navigating stairs. (R. 470). During a visit to his treating orthopedic physician on December 14, 2011, Roby was referred to an "orthopaedist near home" for right knee dislocation with instability. (R. 481-82).

On October 17, 2011, the Adanta Group completed an intake of Roby. (R. 491-504). At that time, he reported anxiety attacks, depression, and "having issues with knee from accident from motorcycle wreck." (R. 491). On October 18, 2011, Roby attended an appointment with Ollie Dennis ("Dennis"), a certified clinical psychologist, the purpose of which was "to assist in determining whether or not [Roby] had or continues to have physical or mental impairment that would prevent him from doing substantial gainful work." (R. 472). Dennis concluded that Roby "manifested depression associated with the orthopedic problems." (R. 477). On November 18, 2011, Roby returned to the Adanta Group and underwent a Medical and Psychiatric Evaluation. (R. 486-89). He was diagnosed with anxiety disorder not otherwise specified and depression disorder not otherwise specified. (R. 489).

On December 21, 2011, Roby took 18-24 Lortab from his mother's purse and overdosed, as well as cut his right arm. (R. 505-19). He was admitted to Eastern State Hospital the following day pursuant to a 72-hour court order. (R. 521-40). He returned to Eastern State Hospital on May 30, 2012, after his mother reported that he had threatened her and made suicidal statements. (R. 541-48). He denied that he threatened his mother or made suicidal statements. (R. 542).

Roby filed for Social Security and disability benefits on May 18, 2011. (R. 141-45). The Commissioner denied his request by letter dated June 28, 2011. (R. 146-49). Roby filed a request for consideration on July 31, 2011. (R. 151-54). The Commissioner denied his request by letters dated November 8, 2011. (R. 161-66). On November 15, 2011, Roby filed a request for an administrative law judge ("ALJ") to hold a hearing regarding his application. (R. 170).

ALJ Roger L. Reynolds held a hearing in Roby's matter on October 17, 2012. (R. 29-48). At the conclusion of the hearing, the ALJ agreed with Roby's counsel that sending Roby to an orthopedist for an updated opinion would be helpful. (R. 47-48). Dr. Edgar A. Lopez-Suescum ("Dr. Lopez-Suescum"), an orthopedist, saw Roby on November 13, 2012. (R. 603-14). The ALJ held a second hearing on May 6, 2013. (R. 49-75). On May 10, 2013, the ALJ issued an unfavorable decision. (R. 10-23). The Appeals Council denied Roby's request for review by order dated September 19, 2014. (R. 1-6).

Roby filed his Complaint in this Court on November 17, 2014. He filed his Motion for Summary Judgment (Pl.'s Mot. for Summ. J., DN 14), including his Fact and Law Summary (Fact & Law Summary, DN 14-3) on May 29, 2015. He filed his memorandum in support on August 14, 2015 (Pl.'s Mem. in Supp. of Mot. for Summ. J., DN 19-1 [hereinafter Pl.'s Mem. in Supp.]), and the Commissioner filed her Fact and Law Summary on October 14, 2015 (Commissioner's Fact & Law Summary, DN 24).

On November 3, 2015, Magistrate Judge Brennenstuhl filed his R&R recommending that the ALJ's decision be affirmed. (R&R). On November 20, 2015, Roby filed his objections. (Pl.'s Objs). On December 22, 2015, the Commissioner filed her Response to Plaintiff's Objections to Magistrate's Report and Recommendation (Commissioner's Resp. to Pl.'s Objs. to Magistrate Judge's R&R, DN 29 [hereinafter Commissioner's Resp.]). This matter is thus ripe for adjudication.

## II.     JURISDICTION

The Court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four.

### III. STANDARD OF REVIEW

Social Security cases may receive different levels of review in federal district courts. The Federal Magistrates Act allows district judges to designate magistrate judges to issue "proposed findings of facts and recommendations for disposition . . . ." 28 U.S.C. § 636(b)(1)(B). The magistrate judge then files a recommendation, and each party may object within fourteen days. Those parts of the report to which objections are raised are reviewed by the district judge *de novo*. 28 U.S.C. § 636(b)(1). In conducting its review, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* This differs from the standard applied to the Commissioner of Social Security's decision. That decision, rendered by an ALJ, is reviewed to determine "whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citations omitted). Substantial evidence is defined as evidence that a "reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted) (citation omitted). It is "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citation omitted). Where substantial evidence supports the ALJ's decision, a court is obliged to affirm. *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) (citation omitted). The court should not attempt to second-guess the factfinder with respect to conflicts of evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted). The district court may consider any evidence in the record, regardless of whether it is cited in the ALJ's decision. *Mullen v. Bowen*, 800 F.2d 535, 545-46 (6th Cir. 1986).

## IV.  DISCUSSION

The thrust of Roby's argument is that the ALJ committed reversible error when he failed to consider Roby's "physical impairments under the appropriate Listing." (Pl.'s Mem. in Supp. 7). He argues that he meets three specific musculoskeletal Listings:[1] (1) 1.02A (major joint dysfunction), (2) 1.03 (reconstructive surgery of a major weight-bearing joint and return to effective ambulation did not occur within 12 months), and (3) 1.06 (fracture of the tibia and return to effective ambulation did not occur within 12 months). (Pl.'s Mem. in Supp. 8). The Magistrate Judge disagreed, finding that "Roby . . . failed to point to specific evidence that demonstrates he can reasonably meet or equal every requirement of Listings 1.02A, 1.03, and 1.06," and consequently that the ALJ did not commit reversible error. (R&R 11).

In his Objections, Roby argues that there was substantial evidence to support the proposition that Roby meets the omitted musculoskeletal Listings, including Dr. Lopez-Suescum's evaluation. (Pl.'s Objs. 2). He argues that, because the ALJ did not consider these listings, "it is impossible to review his decision." (Pl.'s Objs. 2). Roby relies on three cases to support his position.

The first is *Reynolds v. Commissioner of Social Security*, 424 F. App'x 411 (6th Cir. 2011). In *Reynolds*, the Sixth Circuit reiterated the long-established principle that "a reviewing court can reverse the findings of an ALJ only if they are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard." *Reynolds*, 424 F. App'x at 414 (citation omitted). It also noted that "if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits," and consequently found that failure to analyze a claimant's condition in relation to the Listed Impairments did not constitute

---

[1] The listing relevant to this decision is set forth in 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b [hereinafter Listing 1.00B2b].

harmless error. *Id.* at 416 (citation omitted). This holding has been undermined by subsequent case law, as discussed herein.

Roby seeks to distinguish his case from the second case that he cites. In *Forrest v. Commissioner of Social Security*, 591 F. App'x 359 (6th Cir. 2014), the Sixth Circuit found that, even if an ALJ did not make sufficient factual findings that an impairment did not meet or medically equal the severity of a Listed Impairment, the error is harmless when the claimant "has not shown that his impairments met or medically equaled in severity any listed impairment" during the relevant time frame. *Id.* at 364, 36 (citation omitted). Roby argues that *Forrest* is distinguishable because the ALJ did not evaluate the medical evidence regarding Roby's ability to ambulate at all, whereas the ALJ in *Forrest* had. (Pl.'s Objs. 3-4). Consistent with the holding of *Forrest*, the Commissioner correctly rebuts that "the ultimate question is whether the error is harmless, a question that here comes down to whether the ALJ's step three conclusion . . . enjoyed the support of substantial evidence and whether remand would be pointless." (Commissioner's Resp. 2).

Other cases decided after *Reynolds* contain a holding similar to the one enunciated in *Forrest*. In *Malone v. Commissioner of Social Security*, 507 F. App'x 470 (6th Cir. 2012), the Sixth Circuit affirmed the district court's affirmation of an ALJ's denial of benefits when the claimant did not argue that he had a listed impairment at his hearing, but the ALJ nevertheless found that he did not have an impairment or combination of impairments equal or equivalent to a listed impairment. *Id.* at 471, 473. The Court found that the ALJ's determination was supported by evidence in the record, and thus it was unnecessary for the ALJ to make specific findings regarding a particular listed impairment. *Id.* at 472.

In *Hartman v. Astrue*, No. 3:12CV48-S, 2013 WL 4011074 (W.D. Ky. Aug. 5, 2013), the ALJ found that Hartman did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. *Id.* at *3. The ALJ, however, "did not recite any particular Listed Impairments, nor did he set forth specific criteria, or discuss particular evidence in the record in support of his determination." *Id.* This Court held that even if it were "to find that the [ALJ] failed to adequately articulate his reasoning for his finding at the third step, remand is unwarranted, *as the error was harmless*." *Id.* at *6 (emphasis added). In short, while this case and *Forrest* may be factually distinguishable, that does not obviate the applicability of harmless error analysis to this case.

Finally, Roby cites *Brock v. Colvin*, No. 3:14CV1075, 2015 WL 5102994 (N.D. Ohio Aug. 31, 2015), in support. *Brock* is not binding precedent. Additionally, *Brock* is unpersuasive due to its reliance on *Reynolds*, the applicable holding of which has been drawn into question by subsequent Sixth Circuit case law as previously discussed. Accordingly, the Court affords no weight to *Brock*.

Consistent with *Forrest*, the question remaining is whether a remand of Roby's case to the ALJ would be pointless, *i.e.*, whether the ALJ's failure to discuss Roby's physical impairments under Listings 1.02A, 1.03, and 1.06 constituted harmless error. Magistrate Judge Brennenstuhl thoroughly discussed the evidence in the record and its application to Listings 1.02A, 1.03, and 1.06. (*See* R&R 6-11). Roby relies on the expert opinion of Dr. Lopez-Suescum to support his assertion that he does in fact meet at least one of the three listings. (Pl.'s Objs. 6).

In order for Roby to meet the requirements of any of the listings, he would have to show an inability to ambulate effectively, which is defined in Listing 1.00B2b. (R&R 7, 8, 11). An inability to ambulate effectively "means an extreme limitation of the ability to walk." Listing

1.00B2b. This means that a person much be able "to travel without companion assistance to and from a place of employment or school." Listing 1.00B2b.

> [E]xamples of ineffective ambulation include . . . the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

Listing 1.00B2b.

In his report, Dr. Lopez-Suescum opined that Roby could not "travel without a companion for assistance," "walk a block at a reasonable pace on rough or uneven surfaces," or "climb a few steps at a reasonable pace with the use of a single hand rail." (R. 614). He also noted, however, that Roby "does not use any ambulation assistive devices." (R. 604). This intrigued him, specifically "why [Roby] in spite of his complaints of the right knee does not use any ambulation assistive device to alleviate the complaints of the right knee." (R. 605). Dr. Lopez-Suescum also noted that his report regarding whether or not Roby could perform the activities in Listing 1.00B2b were based on Roby's responses to questioning. (R. 604). In his Objections, Roby points to no objective evidence to supporting his subjective complaints made to Dr. Lopez-Suescum regarding his inability to ambulate effectively.

As Magistrate Judge Brennenstuhl noted, "The only support for Roby's inability to ambulate effectively is his own subjective testimony, which without corroborating objective medical evidence, does not establish a substantial question [regarding whether or not he meets one of the listed impairments]." (R&R (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 234 (6th Cir. 1987))). Roby has not established a substantial question, and thus cannot show that the ALJ's finding that he did not meet one of the listed impairments is not supported by substantial evidence. The Court must therefore uphold the ALJ's decision.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED AND ADJUDICATED** that Magistrate Judge Brennenstuhl's Findings of Fact, Conclusions of Law and Recommendation (DN 25) is **ACCEPTED AND ADOPTED IN ITS ENTIRETY**, and Roby's Objections (DN 26) are **OVERRULED**.

This is a final and appealable Memorandum Opinion and Order, and there is no just cause for delay.

**Greg N. Stivers, Judge**
**United States District Court**

January 13, 2016

cc: counsel of record